**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-02026-RM-MJW

TODD BORANDI, individually,

      Plaintiff/Counter-Defendant,

v.

ALLIANCE FOR SUSTAINABLE ENERGY, LLC,
a Colorado Corporation,

      Defendant/Counter-Plaintiff.

---

**ORDER**

---

This matter is before the Court on Defendant/Counter-Plaintiff Alliance for Sustainable Energy, LLC's ("Alliance" or "Defendant") motion for summary judgment (ECF No. 25) on claims asserted in Plaintiff Todd Borandi's ("Borandi" or "Plaintiff") Complaint (ECF No. 1) as well as on its counter-claims (ECF No. 10).

Plaintiff brought suit against Defendant for allegedly violating (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-2(a)(1) by discriminatorily discharging him on the basis of his gender (ECF No. 1 ¶¶ 31-37) and (2) Colorado public policy by discharging him because he engaged in protected conduct when he objected to his employer's alleged unlawful use of federal funds (ECF No. 1 ¶¶ 38-42).  Defendant counterclaimed against Plaintiff for alleged (1) breach of contract (ECF No. 10, Countercl. ¶¶ 12-19) and (2) quantum meruit (ECF No. 10, Countercl. ¶¶ 20-28).

1

For the reasons stated below, the Court GRANTS, in part, Defendant's motion for summary judgment and DENIES, in part, Defendant's motion for summary judgment.

## I.    LEGAL STANDARDS

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem. Coal Co., Inc.,* 41 F.3d 567, 569-70 (10th Cir. 1994).  "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion . . . ."  *Robertson v. Bd. of Cty. Comm'rs of the Cty. of Morgan*, 78 F. Supp. 2d 1142, 1146 (D. Colo. 1999) (citation omitted).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).  Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial.  *See 1-800-Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party.  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

If a movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (citation omitted).

The content of evidence must be admissible to be considered when ruling on a motion for summary judgment.  *Adams v. Am. Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000); *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (citation omitted) (holding that hearsay evidence is not acceptable in opposing a summary judgment motion); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).  Affidavits must be based on personal knowledge and must set forth facts that would be admissible evidence at trial.  *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted).  "Conclusory and self-serving affidavits are not sufficient."  *Id.*  The Court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence.  Fed. R. Civ. P. 56(c)(1)(A), 56(e)(2), 56(e)(3).  "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record."  *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation and citation omitted).  The Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for him."  *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000).  Further, Local Rule 7.1(e) provides that "[e]very citation in a motion, response

or reply shall include the specific page or statutory subsection to which reference is made." D.C. Colo. L. Civ. R. 7.1(e).

"In order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*." *Adams*, 233 F.3d at 1246 (alteration in original and citation omitted). "The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but "'the content or substance of the evidence must be admissible.'" *Adams*, 233 F.3d at 1246 (citation omitted). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." *Southway v. Cent. Bank of Nigeria*, 149 F. Supp. 2d 1268, 1274 (citations omitted). "Rule 56 expressly prescribes that a summary judgment affidavit must 'be made on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.'" *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (citation omitted); *accord* Fed. R. Civ. P. 56(c)(4). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

## II.    BACKGROUND

### A.    Undisputed Factual Background[1,2]

The facts as recited below are based on adequate citations to the record, the contents of

which would be admissible, or to uncontested averments in the parties' pleadings or to facts

marked as undisputed pursuant to the Court's Civil Practice Standards.  The facts are recited in a

light most favorable to the non-moving party.

<ol><li>Excluded Evidence Submitted in Support of and Opposition to Defendant's Summary Judgment Motion</li></ol>

<ol type="a"><li>*E-Mails Dated May 8, 2012 (Exhibit E, ECF No. 28-6)*</li></ol>

Plaintiff submits an e-mail exchange dated May 8, 2012 between him and Robert

Hanson.  (ECF No. 28-6 at 2, Email Dated May 8, 2012.)  Plaintiff does not submit any

information to authenticate Exhibit E.  (*See generally* Dkt.)  Plaintiff submits that Jill Deem

testified that "the email identified as Exhibit E is not conveying to Plaintiff that his job is in

jeopardy." (ECF No. 33-5 ¶ 34; ECF No. 28-5 at 10, Deem Dep. 221:9-222:12.)  But a closer

reading of the cited deposition testimony does not identify to which document Deem is referring

in her testimony.  (*See generally* ECF No. 28-5 at 10, Deem Dep. 221:9-222:12.)  Thus, the

document is inadmissible.  *See* Fed. R. Evid. 602, 701, 901(b)(1), 1007.

Further, Plaintiff states that Exhibit E demonstrates that he received a salary increase.

(ECF No. 33-5 at ¶ 34.)  Exhibit E does not state so.  (*See generally* ECF No. 28-6 at 2, Email

---

[1] Plaintiff does not submit additional undisputed material statements of fact in response to Defendant's undisputed material statements of fact.  (*See generally* Dkt.)  The Court's Civil Practice Standards provide for a non-moving party to submit additional material facts in opposition to a moving party's statement of material facts.  (Moore Civ. Practice Standards § IV.B.2.b.ii ("… the opposing party shall set forth any additional material facts which it contends is undisputed, along with evidence in support of such facts").) (eff. July 2014.)

[2] Neither party objects to the Court's considering any exhibits submitted in support of or in opposition to Defendant's summary judgment motion.  (*See generally* Dkt.)  Both parties fail to properly authenticate many of the documents submitted via an affidavit, declaration, or deposition testimony.  (*See* Dkt.)  Therefore, if a document is relied upon by a party as material and is material to the Order, the Court will address whether the contents of it are admissible in considering the propriety of entering summary judgment.

Dated May 8, 2012.)  Rather, Exhibit E refers to a "bump."  (ECF No. 28-6 at 2, Email Dated May 8, 2012.)

      b.     *In Part, Charles Powers' Affidavit (Exhibit C, ECF No. 29-2)*

Plaintiff submits an affidavit from Charles Powers ("Chuck Powers") who was employed by Defendant from 1990 until 2013. (ECF No. 29-2 at 1, C. Powers Aff. ¶ 1.)  Chuck Powers served as "the manager for the IT Infrastructure and Operations group of the Information Services Office" and reported directly to Jill Deem in that role for fifteen years.  (ECF No. 29-2 at 1, C. Powers Aff. ¶ 2-3.)  Chuck Powers' affidavit, however, presents no foundation as to how he has knowledge as to Plaintiff's job duties.  (*See generally* ECF No. 29-2, C. Powers Aff.)  Therefore, Chuck Powers' affidavit, to the extent that Plaintiff seeks to use it to show what Plaintiff's job duties were (ECF No. 33-5 ¶ 51), is inadmissible because Chuck Power's has not shown he has such personal knowledge and the affidavit is mere conjecture.  *Johnson*, 594 F.3d at 1210; *Southway*, 149 F. Supp. 2d at 1274.

      c.     *10 Years of Gender Discrimination Against Males in IT Senior Leadership Roles in NREL's Information Services Office (Exhibit 13, ECF No. 25-13)*

Defendant submits a document labeled "10 Years of Gender Discrimination Against Males in IT Senior Leadership Roles in NREL's Information Services Office." (ECF No. 25-13, Power Point Presentation.)  Chuck Powers created this document.  (ECF No. 29-2 at 2, C. Powers Aff. ¶ 6.)  Chuck Powers states he gathered information to create this document.  (ECF No. 29-2 at 2, C. Powers Aff. ¶ 6.)  Chuck Powers' affidavit, however, fails to identify how he has knowledge as to the facts asserted in this document.  (*See generally* ECF No. 29-2, C. Powers Aff.)  Specifically, Chuck Powers' affidavit fails to allege how he has knowledge of the identified individual's employment status, age, education, and role.  (*See generally* ECF No. 29-

2, C. Powers Aff.)  Therefore, the "10 Years of Gender Discrimination Against Males in IT

Senior Leadership Roles in NREL's Information Services Office" document is inadmissible

hearsay (within hearsay) and is mere conjecture.  Fed. R. Evid. 801(c), 805; *Johnson*, 594 F.3d at

1210; *Southway*, 149 F. Supp. 2d at 1274.

d.   <em>Promotion List (Exhibit 14, ECF No. 25-14)</em>

Defendant submits a document which it states "identifies the persons who were under

Ms. Deem's supervision whom she promoted."  (ECF No. 33-5 ¶ 75 (citing Exhibit 14, ECF No.

25-14).)  Defendant does not submit a declaration or affidavit to authenticate this document.

(*See generally* Dkt.)  Defendant concedes that this is not a business record.  (*See* ECF No. 33-5 ¶

75.)  During Deem's deposition, she admitted that she had not seen this "Promotion List."  (ECF

No. 33-4 at 5, Deem Dep. 230:18-21.)  Further, Deem testified that the "Promotion List" does

not reflect whom she promoted but rather reflects whom she "supported" for promotion.  (ECF

No. 33-4 at 5-6, Deem Dep. 230:18-231:13.)  Therefore, to the extent the parties use the

"Promotion List" for anything other than to show who Deem "supported" for promotion, the

Promotion List is inadmissible.

2.   <u>Relevant and Admissible Factual Background</u>

a.   <em>Employment History</em>

In 2007, Defendant hired Plaintiff, male, to work at the National Renewable Energy Lab

("NREL") located in Colorado.  (ECF No. 33-5 ¶¶ 2, 4, 7.)  NREL is a laboratory that is

government-owned and funded by the United States Department of Energy ("DOE") and

operated by Defendant.  (ECF No. 33-5 ¶¶ 2-3.)  In 2008, Plaintiff received a promotion to the

title of Manager III for Cyber Security.  (ECF No. 33-5 ¶ 5.)  From his date of hiring until

October 1, 2011, Plaintiff's manager and supervisor was Ms. Jill Deem ("Deem").  (ECF No. 33-

7

5 ¶ 7.)  From October 1, 2011 until July 12, 2012, Mr. Bob Hanson ("Hanson") served as Plaintiff's manager and supervisor.  (ECF No. 33-5 ¶ 8.)

From October 2008 until November 2011, Plaintiff received yearly performance evaluations[3].  (ECF No. 33-5 ¶¶ 9-12.)  Plaintiff's yearly performance evaluations for fiscal years 2008, 2009, and 2010 identified that Plaintiff "exceeded expectations."  (ECF No. 33-5 ¶¶ 9-11.) Plaintiff's fiscal year 2011 evaluation identified that he "meets expectations."  (ECF No. 33-5 ¶ 12.)  Plaintiff's fiscal year 2011 evaluation, however, contained feedback for each half of the year.  (ECF No. 33-5 ¶ 13.)  For the first half of fiscal year 2011, Plaintiff's evaluation stated that Plaintiff was "meeting and at times exceeding expectations for the first half of FY11."  (ECF No. 33-5 ¶ 13.)  For the second half of fiscal year 2011, however, Plaintiff's evaluation stated that Plaintiff's performance was "below expectations."  (ECF No. 33-5 ¶ 14.)  Plaintiff signed his fiscal year 2011 performance evaluation and did not complain regarding his performance rating as "below expectations" for the second half of the year.  (ECF No. 25-2 at 10-11, 2011 Performance Review at 10-11; *see* ECF No. 25-6 at 3, 34-36, 38, Borandi Dep. at 3 (identifying Exhibit 10 as a Performance Feedback and Development Plan for Borandi, 11/8/11), 162:14-163:1, 167:3-12, 169:9-11; ECF No. 33-5 ¶¶ 19-22.)  Plaintiff's 2011 performance evaluation highlights *both* positive and negative performance aspects.  (ECF No. 25-2 at 5-6, 2011 Performance Review at 5-6.)  Specifically, Plaintiff's 2011 performance evaluation states that Plaintiff

> is tenuously meeting expectations . . . Improvements in leadership, flexibility, follow through, and positive attitude are expected right away.  When a leader becomes unhappy he negatively affects the people he leads, his peers, his boss and his clients.  I believe [Plaintiff] can make positive changes going forward.

---

[3] Although not properly authenticated, Plaintiff does not dispute the authenticity of the performance evaluations. (*See* ECF No. 33-5 ¶¶ 9-12.)  The Court presumes that the performance evaluations would be admissible at trial. (ECF Nos. 25-1; 25-2; 25-4; 25-5, Annual Performance Evaluations.)

> [Plaintiff] is an important and key member of the IS Management Team.  He takes his role to protect NREL seriously and his contributions are appreciated.

(ECF No. 25-2 at 8, 2011 Performance Review at 8.)

During the course of Plaintiff's employment with Defendant, he attended Safety and Security Quarterly meetings.  (ECF No. 33-5 ¶¶ 50-51.)  Plaintiff was not precluded from attending Safety and Security Quarterly meetings while employed.  (ECF No. 25-6 at 20-21, Borandi Dep. 94:9-95:9.)  Plaintiff, however, at some point no longer presented at those meetings.  (ECF No. 29-1 at 2, Borandi Aff. ¶ 8.)

In June 2012, Plaintiff met with Ken Powers ("Ken Powers").  (ECF No. 29-1 at 2, Borandi Aff. ¶ 6.)  At that meeting, Plaintiff advised Ken Powers of Plaintiff's "concerns about direct funding regarding cyber security, specifically, that money was being inappropriately used by [Deem;] [and, Plaintiff] further expressed concerns about Scott Blumenreich's departure from NREL and the hiring of Mr. [Bob] Hanson [("Hanson")] to fill that position."  (ECF No. 29-1 at 2, Borandi Aff. ¶ 6.)  Plaintiff believes Defendant failed to follow OMB Circular No. A-122.  (ECF No. 28-10 at 8-9, Pl's. Interrog. Answer ¶ 8.)

Defendant terminated Plaintiff on July 12, 2012.  (ECF No. 33-5 ¶ 30.)  Deem informed Plaintiff that he was terminated.  (ECF No. 28-5 at 4, Deem Dep. 113:14-16.)  At the time Defendant terminated Plaintiff, NREL had a policy in place called Problem Resolution, Policy Number 5-5.4.  (ECF No. 33-5 ¶ 40; ECF No. 25-9, Laboratory-Level Procedure 5-5.4; ECF No. 25-10 at 8-9, Burton Dep. 72:24-73:4.)  Problem Resolution 5-5.4 constitutes a "guideline for [Defendant] in dealing with corrective and disciplinary actions" on a "case-by-case basis."  (ECF No. 25-10 at 5-6, Burton Dep. 20:1-10, 21:10-18.)  At the time Defendant terminated Plaintiff, NREL had a policy in place called Correction and Disciplinary Actions, Policy Number 5-5.5.  (ECF No. 33-5 ¶ 43; ECF No. 25-11, Laboratory-Level Procedures 5-5.5.)  Corrective and

Disciplinary Actions Policy Number 5-5.5 provides that "[d]isciplinary actions can range from an informal discussion with the employee about the matter to immediate involuntary termination of employment."  (ECF No. 25-11 at 2, Laboratory-Level Procedures 5-5.5 at 2.)

Subsequent to Plaintiff's termination, Plaintiff met with Ken Powers who served as NREL's COO ("Chief Operating Officer") at the time.  (ECF No. 33-5 ¶ 31.)

Prior to Defendant's terminating Plaintiff's employment, Plaintiff did not meet with his line manager or a Human Resource representative to discuss his performance or a corrective action plan.  (*See* ECF No. 28-3 at 2-3, Borandi Dep. 28:19-30:1.)  Problem Resolution 5-5.4 provides that a "worker and/or the line manager may request assistance from the Human Resources Office director or the Human Resources Office Representative.  Workers may bypass their line manager and other resources and work with a Human Resources Office representative with their problem or concern."  (ECF No. 25-9 at 2, Laboratory-Level Procedures 5-5.4 at 2.)  Defendant "hope[s]" that either an employee or manager would initiate Problem Resolution Policy Number 5-5.4.  (ECF No. 25-10 at 11, Burton Dep. 75:9-22.)

Defendant has used corrective action plans for other managers.  (ECF No. 28-7 at 6, Burton Dep. 45:11-14.)  Defendant's Human Resource Director believes that a corrective action plans is beneficial for an employee because it clearly defines employer expectations and employee behaviors.  (ECF No. 28-7 at 7, Burton Dep. 70:24-71:7.)

         b.     *Plaintiff's Interactions with Deem*[4]

Plaintiff had annual performance review meetings with Deem.  (ECF No. 29-1 at 2, Borandi Aff. ¶ 5.)

To Deem, Plaintiff questioned her verbally as to how NREL was using DOE money.  (ECF No. 28-5 at 3, Deem Dep. 109:19-110:7; ECF No. 28-8 at 3, Blumenreich Aff. ¶¶ 8-10.)  At some point, Plaintiff "provided written notification to [Deem] and [her] management team that the monies being spent for things other than Cyber Security was inappropriate."  (ECF No. 29-1 at 2, Borandi Aff. ¶ 7.)  At some point, Plaintiff went to his supervisor and Defendant's finance department with a concern regarding DOE money being spent for work done in a group other than cyber security.  (ECF No. 28-3 at 6, Borandi Dep. 134:21-136:4.)  At the time, Plaintiff's supervisor was Hanson.  (ECF No. 28-3 at 6, Borandi Dep. 136:3-4.)  With the finance department, Plaintiff raised his concern with Sue Budden "who was in charge of the budget at the time."  (ECF No. 28-3 at 6, Borandi Dep. 135:17-24.)  Plaintiff does not know whether NREL's expenditure of DOE money constituted fraud.  (ECF No. 28-3 at 5, Borandi Dep. 128:3-11.)

         c.     *Other Employees*

During Plaintiff's tenure with the Defendant, there were seven males with higher education who were Plaintiff's "peers."  (ECF No. 33-5 ¶ 66; ECF No. 25-3 at 5, Pl.'s Interrog. Answer ¶ 4.)  Defendant terminated three of the seven males.  (ECF No. 25-3 at 5, Pl.'s Interrog.

---

[4] Plaintiff disputes the statements of fact proffered by Defendant based upon Deem's notes.  (ECF No. 33-5 at ¶¶ 23-26.)  Although Defendant does not properly authenticate the notes in moving for summary judgment (*see generally* ECF No. 25), Plaintiff submits Deem's deposition testimony during which Deem identified her notes and that she prepared the documents and thus, she has personal knowledge of the notes proffered.  (ECF No. 28-5 at 7-8, Deem Dep. 165:20-166:10, 167:1-16 (identifying Deem deposition Exhibit 15).)  With a showing of personal knowledge, the document is properly before the Court.  Fed. R. Evid. 602, 701, 901(b)(1), 1007.  Plaintiff states that the "notes [Deem] created did not occur contemporaneous with the event."  (ECF No. 33-5 ¶ 23.)  This is an argument as to the weight to be afforded to the notes.  At this matter's procedural posture, on summary judgment, the Court does not weigh evidence.  *Utah Lighthouse Ministry v. Foundation for Apologetic Info.*, 527 F.3d 1045, 1050 (10th Cir. 2008) (citation omitted).

Answer ¶ 4.) One of the seven males transferred. (ECF No. 25-3 at 5, Pl.'s. Interrog. Answer ¶ 4.) One of the seven males was advised to seek other opportunities. (ECF No. 25-3 at 5, Pl.'s. Interrog. Answer ¶ 4.) One of the seven males was demoted. (ECF No. 25-3 at 5, Pl.'s. Interrog. Answer ¶ 4.) During Plaintiff's tenure with the Defendant, there were four females[5] who were Plaintiff's "peers." (ECF No. 33-5 ¶ 66; ECF No. 25-3 at 5, Pl.'s. Interrog. Answer ¶ 4.) These four females had no higher education. (ECF No. 33-5 ¶ 66.) Three of these four females have retired. (ECF No. 25-3 at 5, Pl.'s. Interrog. Answer ¶ 4.) The remaining female transferred to work for Deem. (ECF No. 25-3 at 5, Pl.'s Answer to Interrog. ¶ 4.) There are other male managers and they do not have bachelor degrees. (ECF No. 25-3 at 5, Pl.'s. Interrog. Answer ¶ 4.)

Including Plaintiff, and without regard to the period during Defendant employed Plaintiff, Deem terminated the following males[6]: Scott Blumenreich ("Blumenreich"), Lou Bacci ("Bacci"), Ravi Kumar ("Kumar"), Chuck Powers ("Chuck Powers"), and Paul Dragseth ("Dragseth"). (ECF No. 33-5 ¶ 67.) Deem terminated these individuals "when she felt overwhelmed or challenged by them." (ECF No. 33-5 ¶ 67; ECF No. 25-3 at 7, Pl.'s. Interrog. Answer ¶ 6.)

Plaintiff identified that he was treated less favorably than the following females[7]: Mary Donahue ("Donahue"), Henri Hubenka ("Hubenka"), Penny Rummel ("Rummel") and Marsha Warden ("Warden"). (ECF No. 33-5 ¶ 71; *see* ECF No. 25-3 at 7, Pl.'s. Interrog. Answer ¶ 7.)

---

[5] Plaintiff answered that "one female employee with a bachelor's degree [] transferred prior to Plaintiff['s] beginning his employment with NREL." (ECF No. 25-3 at 5, Pl.'s. Interrog. Answer ¶ 4.) Thus, Plaintiff had four females who were his "peers" during his employment tenure with Defendant.
[6] The inadmissible Power Point presentation refers to each of these individuals with the exception of Dragseth. (*See* ECF No. 25-13 at 2, Power Point Presentation at 2.) The Power Point presentation identifies that Blumenreich, Bacci, Kumar, and Chuck Powers had higher education degrees. (*Id.*)
[7] The inadmissible Power Point presentation refers to each of these individuals, with the exception of Donahue, and identifies that each had no higher education. (ECF No. 25-13 at 2, Power Point Presentation at 2.)

    d.   *Tuition Reimbursement Agreement (Exhibit 15, ECF No. 25-15)*[8]

Plaintiff and Defendant entered into a Nonstandard Tuition Reimbursement Repayment

Agreement ("Agreement"). (ECF No. 33-5 ¶ 81.) The Agreement provides, in pertinent part,

that "if the employee voluntarily terminates employment or is terminated for cause after

completion of tuition reimbursement-funded courses, he or she will be required to reimburse

NREL for the cost of the educational assistance as follows:. . . ." (ECF No. 25-15, Agreement.)

For either graduate or undergraduate degree or certification, or individual courses, if an

employee terminates within 12 months, the employee must repay 100% of Defendant's

expenditure. (ECF No. 25-15, Agreement.) In 2011, Defendant paid $17,263.40 for Plaintiff to

take courses at Capella University. (ECF No. 33-5 ¶¶ 83, 84.) Plaintiff has not paid or

reimbursed Defendant for the tuition payments. (ECF No. 33-5 ¶ 85.)

## III.   ANALYSIS

### A.   Discrimination in Violation of Title VII[9]

Under a Title VII disparate treatment claim, a discrimination plaintiff may oppose

summary judgment under the direct and indirect methods of proof. *Orr v. City of Albuquerque*,

417 F.3d 1144, 1149 (10th Cir. 2005) (citation omitted). Plaintiff pursues only the indirect

method. (ECF No. 28 at 2-9.)[10] Because there is no direct evidence of discrimination in this

---

[8] The Court considers the Agreement only because Plaintiff does not dispute that he entered into such agreement with Defendant and that it is the exhibit attached to Defendant's motion for summary judgment. (*See* ECF No. 33-5 ¶ 81.) Defendant has not authenticated or laid the foundation for this Agreement. (*See generally* Dkt.) The Court presumes that Defendant would be able to establish the Agreement's admissibility at trial.
[9] Plaintiff alleges that Defendant engaged "as part of a pattern and practice of discrimination and retaliation, discriminated against the Plaintiff because of his gender, and terminated Plaintiff in contravention of federal and state law." (ECF No. 1 ¶ 1.) Plaintiff does not develop his theory of a "pattern and practice of discrimination" further. Plaintiff does not allege a disparate impact claim in his Complaint. (*See generally* ECF No. 1.)
[10] Plaintiff does not argue that he has direct evidence of discrimination. (*See generally* ECF No. 28.) "When a plaintiff only puts forth circumstantial evidence of discrimination, [the Court] evaluate[s] such claims under the [*McDonnell-Douglas*] framework." *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 978 (10th Cir. 2008) (citations omitted). Plaintiff has waived the argument that he has direct evidence of discrimination. *See Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1167 (10th Cir. 2005) (holding that arguments not raised in the district court are waived) (citation omitted).

case, the *McDonnell-Douglas* burden-shifting test applies to Plaintiff's Title VII claim.  *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).  Under *McDonnell-Douglas*, Plaintiff must first establish a *prima facie* case of employment discrimination.  411 U.S. at 802.  If Plaintiff makes out a *prima facie* case, the burden shifts to Defendant to come forward with a legitimate, non-discriminatory basis for its employment decision.  *See id*.  If Defendant does so, the inference of discrimination drops out and the burden shifts back to Plaintiff.  Plaintiff, then, must offer evidence to show that gender was a determinative factor in the employment decision or that Defendant's non-discriminatory reason was merely pretext.  *See id.* at 804.

In this case, Plaintiff brings a "reverse discrimination claim," alleging that Defendant discriminated against him on his gender, male.  (*See* ECF No. 1 ¶ 1 (alleging Defendant "discriminated against the Plaintiff because of his gender").)  In a reverse-discrimination case, the Tenth Circuit has modified the *McDonnell-Douglas* burden shifting analysis wherein the plaintiff is not a member of a historically discriminated against group.  *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992).  Here, Plaintiff is not a member a historically discriminated group.  Rather, Plaintiff is male.  (*See* ECF No. 33-5 ¶¶ 2, 4, 7.)  Thus, the Tenth Circuit instructs that Plaintiff's burden to establish a *prima facie* case "requires a stronger showing."  *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006) (citing *Notari*, 971 F.2d at 589).  In a reverse-discrimination claim, the first element of establishing a *prima facie* case is modified and the plaintiff "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority."  *Argo*, 452 F.3d at 1201 (quoting *Notari*, 971 F.2d at 589).  If the plaintiff can make this showing along

with the other *prima facie* elements, the remaining elements of the *McDonnell-Douglas* burden-shifting method are applied which allow for the defendant to provide a legitimate, non-discriminatory reason for its action which then shifts the burden to the plaintiff to establish that the proffered reason is merely a pretext for discrimination. *Mattioda v. White*, 323 F.3d 1288, 1291-93 (10th Cir. 2003).

Alternatively, in a reverse-discrimination claim, a plaintiff can demonstrate discrimination without reliance on the modified *McDonnell-Douglas* analysis by presenting either direct or indirect evidence sufficient "to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred. *Notari*, 971 F.2d at 590.

Neither party analyzes Plaintiff's Title VII claim under the correct "reverse-discrimination" rubric. (*See generally* ECF Nos. 25; 28; 33.) Even as structured by the parties under the lower, traditional *prima facie* threshold, *Argo*, 452 F.3d at 1201, however, Plaintiff still fails to set forth a *prima facie* of discrimination; therefore, Defendant is entitled to summary judgment on Plaintiff's Title VII claim.

1.    *Prima Facie* Case of Discrimination

To establish a *prima facie* case for discrimination, Plaintiff must show: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)[11]. Defendant concedes the first two

---

[11] The Tenth Circuit has also framed this *prima facie* case of discriminatory discharge as one in which a plaintiff must demonstrate: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the position and satisfactorily performing plaintiff's job; (3) plaintiff was discharged; and (4) plaintiff's position was not eliminated after plaintiff's discharge. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1150 (10th Cir. 2008) (citations omitted). Neither party relies upon this construction of Plaintiff's *prima facie* case. (*See generally* ECF Nos. 25; 28; 33.) Relying upon this construction, however, does not materially alter the Court's analysis as the crucial inquiry is whether Plaintiff establishes that his termination occurred under circumstances giving rise to an "inference of unlawful discrimination." *See Adamson*, 514 F.3d at 1150-51. Plaintiff fails in this endeavor for the reasons articulated in Section III.A.1.

elements of Plaintiff's *prima facie* case of discrimination[12]. (ECF No. 25 at 3.) Thus, at issue is only whether Defendant's terminating Plaintiff took place under circumstances giving rise to an inference of discrimination. A plaintiff "can establish evidence of the third prong in various ways, such as 'actions or remarks made by decisionmakers,' 'preferential treatment given to employees outside the protected class,' or 'more generally, upon the timing or sequence of events leading to [a] plaintiff's termination.'" *Barlow v. C.R. Eng., Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (quoting *Plotke v. White*, 405 F.3d 1092, 1100-01 (10th Cir. 2005)). For the following reasons, the Court finds that Plaintiff fails to set forth a *prima facie* case of discrimination.

a.      *Similarly Situated Analysis[13]*

In a typical Title VII discrimination case, if a plaintiff can show that similarly situated non-minority employees were treated in a more favorable manner, this gives rise to an inference of discrimination and satisfies a plaintiff's *prima facie* burden. *English v. Colo. Dep't of Corrs.*, 248 F.3d 1002, 1011 (10th Cir. 2001) (citation omitted). Plaintiff argues that Chuck Power's power-point presentation identifies that "all the male employees that worked under [Deem] that have a higher education than she has, have either been "terminated", "ran out", "demoted" and/or "transferred." (ECF No. 28 at 3 (citing ECF No. 25-13, Power Point).) Further, Plaintiff argues that "all the female employees that are in an IT Senior Leadership position under [Deem], are 'still in their role.'" (ECF No. 28 at 3 (citing ECF No. 25-13, Power Point).) First, the Court has found that the content of Powers' power-point presentation (ECF No. 25-13) is not admissible.

---

[12] Again, for reasons stated previously (*supra* Section III.A), Plaintiff is not in a protected classification.

[13] Plaintiff argues that females also objected to Deem's spending related to DOE funding and Defendant's hiring Hanson. (ECF No. 28 at 4.) With both arguments, Plaintiff provides no context as to how these individuals were similarly situated to him, *i.e.*, subject to the same supervisors, had similar work performances, *etc*. With respect to Defendant's hiring Hanson, Plaintiff does not provide "facts" showing that he objected to Hanson's hiring other than for his preference for another candidate. (ECF No. 25-12, E-mail dated Sept. 23, 2010.) Plaintiff does not provide facts showing that other similarly situated females also preferred another candidate.  (*See generally* ECF No. 28.)

*Arguendo*, assuming the content of Powers' power-point presentation (ECF No. 25-13) is admissible, Powers' power-point presentation still does not support Plaintiff's contention. Specifically, Plaintiff has failed to eliminate a confounding variable, *i.e.*, higher education among Defendant's employees, and thus, Plaintiff has not properly set forth a similarly situated analysis. *See Luster v. Vilsack*, 667 F.3d 1089, 1094 (10th Cir. 2011) (holding that to be "probative of discrimination, statistical evidence must 'eliminate nondiscriminatory explanations for the disparity'") (quoting *Tuner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1147 (10th Cir. 2009)); *see Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (holding that "[a] court should . . . compare *the relevant employment circumstances*, such as work history and company policies applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated") (emphasis added) (citing *David v. City & Cty. of Den.*, 101 F.3d 1344, 1359-60 (10th Cir. 1996)).  It is not simply males that Deem "terminated," "ran out," "demoted," and/or "transferred."  Rather, it is male employees with "a higher education" which is in contrast to the males and females without higher education who remain in their roles.  (ECF No. 25-13 at 2, 6, Power Point at 2, 6.)  Further, Plaintiff has not shown that female employees with similar job performances as him were not terminated.  (*See generally* ECF No. 28.)

For similar reasons, the fact that "some female employees also openly objected to DOE funding being spent by [Deem] . . . [but] 'were not targeted in any fashion'" fails to establish an inference of discrimination. (ECF No. 28 at 4.)  Again, Plaintiff fails to eliminate potentially confounding variables, *i.e.*, the differences in higher education as well as job performances.

b.    *Blumenreich's Termination*

The Tenth Circuit has held that "the obligation imposed by Title VII is to provide an equal opportunity for [all] . . ., without regard to whether members of the applicant's [sex] are already proportionately represented in the work force." *Pitre v. W. Elec. Co., Inc.*, 843 F.2d 1262, 1272 (10th Cir. 1988) (quoting *Furnco Constr. Co. v. Waters*, 438 U.S. 567, 579 (1978)). Further, the Tenth Circuit has held that hiring or promoting a member of a protected class is insufficient to insulate the employer from liability. *Pitre*, 843 F.3d at 1272 (citations omitted). Thus, the fact that Defendant hired a male to replace a male (when it hired Hanson to replace Blumenreich (ECF No. 28-8 at 3, Blumenreich Aff. ¶¶ 5-6)), does not insulate itself from liability. *See Pitre*, 843 F.2d at 1272-73.

Plaintiff attempts to analogize Blumenreich's termination to his own.  (ECF No. 28 at 4 n.4.)  Plaintiff fails, however, to argue and support with materially disputed facts that Deem's "reducing [Plaintiff's] pronounced role as the manager of cyber security" led to his termination. (*See generally* ECF Nos. 28; 28-8 at 4, Blumenreich Aff. ¶ 12.)  Further, Plaintiff has not shown that the mere "alteration" of Plaintiff's job responsibilities, from a presenter to a non-presenter at security meetings, is an actionable adverse employment action.  *See Sanchez v. Den. Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) (citations omitted).

c.    *Complaints Against Deem for Discrimination*

Plaintiff argues that "[e]stablishing an inference of discriminatory conduct further, is the veracity of the [Defendant's] claim that [Deem] has never been the subject of a complaint of unfair treatment; retaliation and/or discriminatory behavior."  (ECF No. 28 at 4.)  Plaintiff's argument is misplaced.  It goes to Defendant's credibility and at this matter's procedural posture, the Court has construed all facts in a light most favorable to Plaintiff.

      d.    *Plaintiff Undermines Any Inference of Discrimination*

A plaintiff may plead himself out of a cause of action by alleging facts which undermine his claim.  *See Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *see also Blumhagen v. Sabes*, Case No. 94-8022, 78 F.3d 597 (10th Cir. Mar. 4, 1996) (unpublished).

Plaintiff undermines his Title VII claim by admitting that Deem was "trying to find a way to get rid of [him]" because he disagreed with her about the way to implement the risk management approach at NREL.  (ECF No. 33-5 ¶ 53; ECF No. 25-6 at 22, Borandi Dep. 98:2-23.)  Clearly, a disagreement about the "way to implement the risk management approach" has nothing to do with one's gender.

Further, Plaintiff undermines his Title VII claim by admitting that Deem terminated male employees, including himself, when she felt overwhelmed or challenged by them.  (ECF No. 25-3 at 7, Pl's. Interrog. Answer ¶ 6.)  Plaintiff does not present the Court with a disputed material fact that Deem discharged him solely based upon his gender as opposed to his gender and a confounding variable, such as her feeling "overwhelmed or challenged" by him.

Additionally, Plaintiff undermines his Title VII claim by admitting that it was only males with higher education who Deem targeted.  (ECF No. 33-5 ¶ 66; ECF No. 25-3 at 5, Pl's. Interrog. Answer ¶ 4.)  Again, Plaintiff does not eliminate a confounding variable, *i.e.*, higher education, in the analysis as to how Deem treated males as opposed to females.  Plaintiff concedes this fact when he argues that he "had a concern that *certain* male employees were being treated differently than female employees."  (ECF No. 28 at 3 (emphasis added).)

      e.    *Plaintiff's Arguments Regarding Pretext Do Not Support a Discriminatory Indicia Finding*

Under the rubric of pretext, Plaintiff makes several arguments for how Defendant's reason to terminate him is pretextual.  (ECF No. 28 at 5-9.)  Even though Plaintiff makes these

arguments under the pretext rubric, the Court has considered Plaintiff's arguments and does not find that these arguments support a finding of discriminatory indicia on the basis of Plaintiff's gender.

Specifically, with respect to Defendant's allegedly violating its own policies, Plaintiff's argument fails because Plaintiff does not support this argument with admissible evidence that Defendant followed its policies with regard to other terminations for similar performance deficiencies and those individuals were similarly situated to him in all material respects.  The Court acknowledges that Defendant has placed other managers in corrective actions plan for deficient performances (ECF No. 28-7 at 6, Burton Dep. 45:11-14), which is in contrast to Plaintiff's situation, but Plaintiff fails to identify who these other managers were, their genders, and whether they had similar performance deficiencies.  (*See generally* ECF No. 28.)  Further, Corrective and Disciplinary Actions Policy Number 5-5.5 provides that "[d]isciplinary actions can range from an informal discussion with the employee about the matter to *immediate involuntary termination of employment*."  (ECF No. 25-11 at 2, Laboratory-Level Procedures 5-5.5 at 2 (emphasis added).)  Thus, it was not necessary that Defendant advise Plaintiff of his performance deficiencies prior to terminating his employment.  (*See id*.)

Specifically, with respect to Plaintiff's argument that he welcomed the switch the risk-management approach, Plaintiff's and non-management's subjective opinions that Plaintiff "embraced and led Risk Management and cyber security within the company" (ECF No. 28 at 5-6) carry no weight before the Court.  *See Johnson v. N.T.I.*, 944 F. Supp. 839, 841 (D. Colo. 1996) (holding that absent additional specific evidence, a plaintiff's "conclusory allegations and subjective beliefs" were insufficient to establish pretext) (citation omitted).  Plaintiff in support of his argument cites Blumenreich's affidavit as to when the latter held the position Deputy

Chief Information Officer and managed Plaintiff.  (*See* ECF No. 28 at 6 (citing ECF No. 28-8,

Blumenreich's Aff.)  But Blumenreich did not serve as Plaintiff's manager at the time Defendant

terminated Plaintiff.  (ECF No. 33-5 ¶ 8.)  Therefore, Blumenreich cannot opine as to

Defendant's reasoning at the time it terminated Plaintiff's employment.

> ### 2.    Pretext

Because Plaintiff has failed to establish a *prima facie* case of discrimination, the Court

does not need to reach the issue as to whether Defendant's articulated reason for terminating

Plaintiff is pretext for discrimination.  *See Sorenson v. City of Aurora*, 984 F.2d 349, 352 (10th

Cir. 1993) (citations omitted).

> ### B.    Wrongful Discharge in Violation of Public Policy

> ### 1.    Defendant Did Not Waive This Argument

The Tenth Circuit has held that "if the court relies on new materials or new arguments in

a reply brief, it may not forbid the nonmovant from responding to these new materials."  *Pippin*

*v. Burlington Resources Oil & Gas Co.*, 440 F.3d 1186, 1192 (internal quotation and citations

omitted).  "When a party puts forth new arguments in a reply brief, a court may avoid error by

either:  (1) choosing not to rely on the new arguments in determining the outcome of the motion;

or (2) permitting the nonmoving party to file a surreply."  *E.E.O.C. v. Outback Steak House of*

*Fla., Inc.*, 520 F. Supp. 2d 1250, 1260 (D. Colo. 2007) (citing *Pippin*, 440 F.3d at 1192).  Here,

Defendant did not move for summary judgment on Plaintiff's claim on the basis of wrongful

discharge in violation of Colorado's public policy.  (*See generally* ECF No. 25.)  Rather,

Defendant moved on the basis that it did not retaliate against Plaintiff in violation of Title VII.

(ECF No. 25 at 11-16.)  But Plaintiff did not plead such a claim.  (*See generally* ECF No. 1.)

Ordinarily, because Defendant did not move for summary judgment as a matter of law with

respect to Plaintiff's state-law claim, the Court would find that Defendant has waived that

argument.  *See Pippin*, 440 F.3d at 1192 (holding that "if the district court does preclude a

surreply, then the court can avoid error only by not relying on the new materials and arguments

in the movant's reply brief") (citation omitted); *see also Robertson*, 78 F. Supp. 2d at 1146.  But

the Tenth Circuit makes an exception to its rule that it does not review issues raised for the first

time in a reply brief, "when the new issue argued in the reply brief is offered in response to an

argument raised in the [plaintiff's] brief."  *In re Gold Resource Corp. Sec. Litig.*, 776 F.3d 1103,

1119 (quoting *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1166 n.3 (10th Cir. 2003)).

Plaintiff goes beyond arguing that Defendant waived its argument that it is entitled to summary

judgment on the wrongful discharge claim because he proffers that his claim meets the elements

necessary to state a claim.  Thus, Defendant is permitted to reply to this argument.  *See In re*

*Gold Resource Corp. Sec. Litig.*, 776 F.3d at 1119 (quotation omitted).

For the first time in its reply brief, Defendant argues that it is entitled to summary

judgment on Plaintiff's wrongful discharge in violation of Colorado's public policy because such

a claim is analyzed under the same rubric as a Title VII retaliation claim.  (ECF No. 33 at 14-18).

Clearly, this argument is "new" and should have been raised prior to the reply brief.  Further, the

Court is not persuaded that the claims are analyzed under the same rubric.  Defendant's reliance

upon *Paloni v. City of Albuquerque Police Department*, 212 F. App'x 716 (10th Cir. 2006)

(unpublished), is misplaced.  In *Paloni*, the plaintiff alleged violations of New Mexico state law

for constructive discharge, a First Amendment claim of retaliatory discharge, and a claim under

Title VII.  *Id*. at *718.  None of the claims in *Paloni* involves a wrongful discharge in violation

of public policy which is the second claim at issue in this matter.

2.      Defendant Is Not Entitled to Summary Judgment on Plaintiff's State-Law
        Claim

The Colorado Supreme Court has stated that

the manifest public policy of [Colorado] is that neither an employer nor an
employee should be permitted to knowingly perpetrate a fraud or deception on the
federal or state government.  A corollary of this policy is that an employee,
whether at-will or otherwise, should not be put to the choice of either obeying an
employer's order to violate the law or losing his or her job.

*Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992) (*Lorenz*).  In *Lorenz*, the

Colorado Supreme Court articulated that an employee establishes a *prima facie* case of wrongful

discharge in violation of public policy by presenting evidence that:

(1)     the employer directed the employee to perform an illegal act as part of the

employee's work-related duties or prohibited the employee from performing a public

duty or exercising an important job-related right or privilege;

(2)     the action directed by the employer would violate a specific statute related to the

public health, safety, or welfare, or would undermine a clearly expressed public policy

relating to the employee's basic responsibility as a citizen or the employee's right or

privilege as a worker;

(3)     the employee was terminated as the result of refusing to perform the employer's

directed act; and

(4)     the employee presents evidence showing that the employer was aware, or

reasonably should have been aware, that the employee's refusal to comply with the

employer's order or directive was based on the employee's reasonable belief that the

action ordered by the employer was illegal, contrary to clearly expressed statutory policy

relating to the employee's duty as a citizen or violative of the employee's legal right or

privilege as a worker.

*Lorenz*, 823 P.2d at 109.

Subsequently, the Colorado Supreme Court expressed that the "public-policy exception is grounded in the notion that an employer should be prohibited from discharging an employee with impunity for reasons that contravene widely accepted and substantial policies." *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 552 (Colo. 1997). For this reason, it is acknowledged that the "dismissal of an employee can jeopardize public policy when the employee has engaged in conduct consistent with public policy without a request by the employer to violate public policy" or a request by the employer to avoid taking actions consistent with public policy. *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 288 (Iowa 2000). Therefore, the Court's "focus is on the adverse actions of the employer in response to the protected actions of the employee, not [on] the actions of the employer which may give rise to the protected actions of the employee." *Fitzgerald*, 613 N.W.2d at 288. To deny a plaintiff this cause of action under circumstances in which the employer has not (1) directed the employee to take action in violation of public policy or (2) prohibited the employee from taking action to expose a violation of public policy—would be to condone the employer's breach of a duty which is not to discharge an employee for attempting to correct an illegal act. *See Cummins v. EG & G Sealol, Inc.*, 690 F. Supp. 134, 139 (D.R.I. 1988). That is why one court within the District of Colorado[14] has distilled the elements necessary to survive a motion for summary judgment on a wrongful discharge in violation of public policy to the following potentially disputed material facts, whether:

(1)    the defendant employed the plaintiff;

---

[14] The Court notes that the District of Colorado has not been consistent in its application of this claim's elements in addressing summary judgment motions. *See Defazio v. Starwood Hotels & Resorts Worldwide, Inc.*, Case No. 11-CV-03357-WJM-KLM, 2013 WL 1676633, at *6 (D. Colo. Apr. 17, 2013) (citing *Jaynes v. Centura Health Corp.*, 148 P.3d 241, 243 (Colo. App. 2006)); *Bleil v. Williams Prod. RMT Co., LLC*, 911 F. Supp. 2d 1141, 1149 (D. Colo. 2012).

(2)      the defendant discharged the plaintiff;

(3)      the defendant discharged the plaintiff in retaliation for exercising a job-related

right or performing a specific statutory duty, or that the termination would undermine a

clearly expressed public policy; and

(4)      the public policy invoked truly impacts the public in order to justify interference

into an employer's business decisions.

*Mullin v. Hyatt Residential Group, Inc.*, Case No. 13-CV-248-WJM-NYM, 2015 WL 1064169,

at *3 (D. Colo. Mar. 9, 2015) (internal quotations and citations omitted) [15]; *see also High v. JIK,*

*Inc.*, Case No. 12-CV-02373-BNB-KLM, 2013 WL 4718753, at *6-7 (D. Colo. Sept. 3, 2013);

*Angell v. Fairmount Fire Prot. Dist.*, 907 F. Supp. 2d 1242, 1255-56 (D. Colo. 2012).  And the

Court agrees with these elements.

Defendant argues that Plaintiff's claim fails because he "did not complain to anyone in a

position of authority to address his alleged concerns/whistleblowing prior to his termination; and,

[] Plaintiff's complaints did not constitute protected whistleblowing activity."  (ECF No. 33 at

15.)  Further, Defendant argues that Plaintiff's claim fails because Plaintiff has not alleged that

he made complaints of fraud.  (ECF No. 33 at 17.)  The Court is not persuaded by Defendant's

arguments.

First, Plaintiff, with the Court's taking the facts in a light most favorable to him as the

non-movant, complained to Ken Powers, in June 2012 regarding Deem's alleged unlawful use of

---

[15] Plaintiff cites *Waters v. AXL Charter Sch.*, Case No. 12-CV-01384-LTB, 2013 WL 856524, at *9 (D. Colo. Mar. 7, 2013) (citations omitted) for the proposition that a plaintiff states a claim for wrongful discharge in violation of public policy by alleging that:  (1) he was employed by the defendant; (2) the defendant discharged him; and (3) the defendant discharged him in retaliation for exercising a job-related right or performing a specific statutory duty, or that the termination would undermine a clearly expressed public policy.  (ECF No. 28 at 10.)  While Plaintiff accurately cites *Waters*, the procedural postures of *Waters* and this matter are distinct.  *Waters* was on briefing to dismiss the plaintiff's claim.  *Id.* at *10.  In contrast, this matter is on briefing for summary judgment.  (ECF No. 25.)  Defendant, similarly to Plaintiff, concedes the elements of a wrongful discharge claim as set forth in Plaintiff's brief.  (ECF No. 33 at 14.)

federal funds.  (ECF No. 29-1 at 2, Borandi Aff. ¶ 6.)  Defendant correctly points out that

Plaintiff testified that he met with Ken Powers in July 2012 after he was terminated.  (ECF No.

33-5 ¶ 31.)  But Plaintiff's affidavit is not inconsistent with his deposition testimony.  Rather, it

reflects two meetings.  Defendant does not present the Court with facts which indicate that

Plaintiff has admitted that he met with Ken Powers solely subsequent to Defendant's terminating

his employment.  (*See generally* ECF Nos. 25; 33.)  Therefore, the Court can consider Plaintiff's

affidavit since it is not an attempt to create a sham fact issue.  *See Burns v. Bd. of Cty. Comm'rs*

*of Jackson Cty.*, 330 F.3d 1275, 1281-82 (10th Cir. 2003) (citation omitted).

Second, Plaintiff did make an internal complaint to an individual (Ken Powers) who

could act on his whistleblowing claim regarding Deem's inappropriate use of federal funds.

(ECF No. 29-1 at 2, Borandi Aff. ¶ 6.)  Defendant argues that Plaintiff "did not file any internal

or external complaints about his interactions and frustrations with [Deem]."  (ECF No. 33 at 15

(citing ECF No. 33-5 ¶ 29).)  But Plaintiff's admitting that he did not file any internal complaints

regarding his "interactions and frustrations" is not the same as Plaintiff's position that he

complained about his concern regarding Deem's misappropriation of federal funds.  (ECF No.

29-1 at 2, Borandi Aff. ¶ 6.)  Defendant should have been more precise in its questioning of

Plaintiff or it should have more precisely asserted statements of undisputed material facts.

Third, at some point prior to Defendant's terminating Plaintiff's employment, Plaintiff

went to his supervisor, Hanson, with a concern regarding DOE money being spent for work done

in a group other than cyber security.  (ECF No. 28-3 at 6, Borandi Dep. 134:21-136:4.)

Fourth, Plaintiff complained of potential misappropriation of federal funds.  (ECF No.

29-1 at 2, Borandi Aff. ¶ 6.)  While it is accurate that Plaintiff cannot state that Defendant's

expenditures constituted fraudulent activity, it is disputed as to whether or not Defendant's

actions were fraudulent or violated federal policy.  (ECF No. 33-5 ¶ 64 (citing ECF No. 28-3 at 5, Borandi Dep. 126:13-128:11); ECF No. 28-10 at 8-9, Pl's. Interrog. Answer ¶ 8 (identifying that Plaintiff believes Defendant failed to follow OMB Circular No. A-122).)  In *Kearl v. Portage Envtl., Inc.*, 205 P.3d 496, 499 (Colo. App. 2008), the Colorado Court of Appeals held that the tort of wrongful discharge in violation of public policy extends to internal "whistleblowing" activities regarding activities that impact the public such as that at issue in this matter.

Thus, disputed material facts exist as to whether Plaintiff complained to someone in a position of authority regarding a public policy issue prior to Defendant's terminating him.  As such, Defendant is not entitled to summary judgment on Plaintiff's wrongful discharge in violation of public policy claim.

### C.      Breach of Contract

The elements for breach of contract claim under Colorado law are:  (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.  *PayoutOne v. Coral Mortg. Bankers*, 602 F. Supp. 2d 1219, 1224 (D. Colo. 2009) (citation omitted).

#### 1.      Whether there Exists a Contract

Preliminarily, the Court notes that there is a confounding issue that neither party addresses.  Neither party disputes that Plaintiff and Defendant entered into the Agreement.  (ECF No. 33-5 ¶ 81 (citing ECF No. 25-3 at 15, Pl's. Admissions ¶¶ 1-2; ECF No. 25-15, Agreement).)  The Agreement (ECF No. 25-15) presented to the Court, however, is between Plaintiff and NREL.  Further, the parties agree that NREL is a separate entity than Defendant. (ECF No. 33-5 ¶¶ 2-4.)  Thus, the Court finds a discrepancy between the parties' stipulation and

27

the document relied upon in support of Defendant's motion for summary judgment. Nonetheless, the Court's ruling need not rest on this issue.

2.     <u>Defendant is Not Entitled to Summary Judgment on its Contract Claim</u>

Defendant moves for summary judgment on the basis that Plaintiff has breached the Agreement between the parties by failing to repay his tuition reimbursement.  (ECF No. 25 at 16-17.)  The Agreement provides, in pertinent part, that "if the employee voluntarily terminates employment or is terminated for cause after completion of tuition reimbursement-funded courses, he or she will be required to reimburse NREL for the cost of the educational assistance as follows:. . . ."  (ECF No. 25-15, Agreement.)  The Agreement does not define "cause."  (*See generally* ECF No. 25-15, Agreement.)  Defendant has cited no record material that defines terminable offenses.  (*See generally* Dkt.)  Defendant has cited no record material that it has terminated other employees for similar performance deficiencies to Plaintiff's.  (*See generally* Dkt.)  At the time Defendant terminated Plaintiff's employment, Defendant did not provide Plaintiff with a reason.  (ECF No. 29-1 at 2, Borandi Aff. ¶ 9.)

In *Weir v. Anaconda Co.*, 773 F.2d 1073, 1080 (10th Cir. 1985), the Tenth Circuit held that because there was no definition of "cause" in the applicable agreement, a district court could properly resort to the term's ordinary meaning.  "Cause" as defined by the district court in *Weir*, is a shortcoming in performance which is detrimental to the discipline or efficiency of the employer.  *Id*.  Incompetency or inefficiency or some other cause within the control of the employee which prohibits him from properly completing his task is also included within the definition.  *Id*.  A discharge for cause is one which is not arbitrary or capricious, nor is it unjustified or discriminatory.  *Id*.  (Citations omitted)

28

By not providing Plaintiff with a reason for terminating him, the Court finds a material factual issue as to whether the discharge was arbitrary or capricious at the time Defendant made the decision.

The Court has not addressed whether Defendant's stated reason to terminate Plaintiff, that as result of the shift to the risk management approach, Plaintiff's performance began to deteriorate which led to his termination (ECF No. 25 at 8-10 (citing ECF No. 25-2, 2011 Performance Evaluation)), is the actual reason for his termination.  Defendant articulated this reason as non-discriminatory and proffered it in the context of the *McDonnell-Douglas* analysis. The Court finds that Defendant's reason for terminating Plaintiff is disputed.  (*See* ECF Nos. 25 at 8-10; 28 at 5-9.)  The Court reaches this holding especially in light of the fact that Defendant gave no reason at the time of Plaintiff's termination (ECF No. 29-1 at 2, Borandi Aff. ¶ 10). Moreover, a non-discriminatory reason is not synonymous with "cause."

Thus, Defendant fails to carry its burden that the material facts establish that it is entitled to judgment as a matter of law on its breach of contract claim.

## D.    Quantum Meruit

"To recover in quantum meruit, a plaintiff must demonstrate that:  (1) at plaintiff's expense; (2) defendant received a benefit; (3) under circumstances that would make it *unjust* for defendant to retain the benefit without paying."  *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 446 (Colo. 2000) (citation omitted and emphasis added).  For reasons articulated previously (*see supra* Section III.C.2), the Court finds a material factual issue as to whether the discharge was for "cause" such that if it were not, then it would not be "unjust" for Plaintiff not to repay Defendant.

Thus, Defendant fails to carry its burden that the material facts establish that it is entitled to judgment as a matter of law on its quantum meruit claim.

## IV.   CONCLUSION

Based on the foregoing, the Court:

(1)     GRANTS, in part, and DENIES, in part, Defendant's motion for summary judgment (ECF No. 25), to wit, the Court:

(i)     GRANTS Defendant's motion for summary judgment on Plaintiff's Title VII discrimination claim (ECF No. 1 ¶¶ 31-37);

(ii)     DENIES Defendant's motion for summary judgment on Plaintiff's unlawful discharge in violation of Colorado public policy claim (ECF No. 1 ¶¶ 38-42);

(iii)     DENIES Defendant's motion for summary judgment on its counter-claim for breach of contract (ECF No. 10, Countercl. ¶¶ 12-19); and

(iv)     DENIES Defendant's motion for summary judgment on its counter-claim for quantum meruit (ECF No. 10, Countercl. ¶¶ 20-28).

DATED this 8th day of May, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge